PARKWAY, INC., PLAINTIFF, v.
MABEL BRIGGS CURRY, DEFENDANT.

District Court
Essex County

September 11, 1978.

*Mr. Leo Niewirth,* attorney for plaintiff.

*Mr. Eldridge Hawkins,* attorney for defendant.

BAIME, J. D. C. The question presented in this case is of first impression. At issue is whether defendant's failure to pay double rent, as mandated by *N. J. S. A.* 2A:42–5[1], constitutes sufficient grounds for eviction under New Jersey's summary dispossess statutes[2]. Resolution of the question depends upon a reconciliation of two competing statutory

---

[1] *N. J. S. A.* 2A:42–5 provides:

If a tenant of real estate shall give notice of his intention to quit the premises by him held at a time specified in such notice, and shall not deliver up the possession of such real estate at the time specified in the notice, such tenant, his executors or administrators, shall, from such time, pay to his landlord or lessor, his heirs or assigns, double the rent which he should otherwise have paid, to be levied, sued for and recovered at the same times and in the same manner as the single rent before the giving of such notice could be levied, sued for and recovered. Such double rent shall continue to be paid during all the time such tenant shall continue in possession after the giving of such notice.

[2] *N. J. S. A.* 2A:18–53 *et seq.*

commands. Specifically, *N. J. S. A.* 2A:42–5 provides that a tenant is to pay double rent where he fails to vacate the demised premises in accordance with a notice terminating a periodical tenancy previously served upon the landlord. However, the Anti-Eviction Act does not expressly authorize the removal of a residential tenant who holds over. In point of fact, the Act permits a residential tenant to remain indefinitely in the demised premises as long as he adheres to the terms of the lease[3] and does not willfully destroy the landlord's property[4] or otherwise act in a disorderly manner[5]. Nevertheless, the summary dispossess statutes provide for summary eviction where a tenant fails to pay rent in accordance with his lease. *N. J. S. A.* 2A:18–61.1(a). The principal question raised here is whether the failure of the defendant to pay the statutory penalty prescribed by *N. J. S. A.* 2A:42–5 constitutes good cause for summary eviction.

Plaintiff argues that defendant violated the proscription set forth in *N. J. S. A.* 2A:42–5 when she refused to vacate the demised premises in accordance with a notice to quit which she previously served upon the landlord, thereby subjecting her to the statutory penalty requiring the payment of double rent. It is uncontroverted that defendant has continued to pay rent in accordance with her lease. However, she has refused to pay the statutory penalty as required by *N. J. S. A.* 2A:42–5. Plaintiff's claim is thus grounded upon *N. J. S. A.* 2A:18–61.1(a) which provides that the failure to "pay rent due and owing under the lease" constitutes "good cause"[6] for eviction.

Defendant argues that the notice served upon the landlord was defective in various particulars and, therefore, did not

---

[3]*N. J. S. A.* 2A:18–61.1(d) and (e).

[4]*N. J. S. A.* 2A:18–61.1(c).

[5]*N. J. S. A.* 2A:18–61.1(b).

[6]*N. J. S. A.* 2A:18–61.3.

effectively terminate her month-to-month tenancy. She further contends that the liability imposed by *N. J. S. A.* 2A:42–5 is in the nature of a statutory penalty and does not constitute "rent" as that term is utilized in *N. J. S. A.* 2A:18–61.1(a). Finally, she argues that the penalty prescribed by *N. J. S. A.* 2A:42–5 was impliedly repealed by the Legislature's subsequent enactment of the Anti-Eviction Act.

The facts are not in dispute. On November 15, 1974 defendant entered into a two-year written lease with respect to residential premises located in Irvington. Under the rental agreement defendant was to pay monthly installments in the sum of $188. The lease further provided that defendant was to give plaintiff 60 days notice in the event she intended to vacate the premises at the expiration of the two-year term. It would appear that both parties were satisfied with the agreement and complied fully with its provisions.

The lease expired on November 30, 1976, but defendant continued to reside in the premises on a month-to-month basis at an increased rental of $195. On June 6, 1978 defendant gave written notice to plaintiff indicating her intention to vacate the apartment. In the notice defendant stated that her tenancy was to terminate on June 30, 1978. Evidently, defendant's decision to terminate the month-to-month tenancy was precipitated by a dispute with plaintiff concerning the conditions of the apartment. In any event, it is uncontroverted that defendant subsequently met with a representative of plaintiff at the latter's office and attempted to revoke her notice to quit the premises. Plaintiff refused defendant's request and ultimately instituted an action to evict the tenant on the basis of her failure to adhere to the terms of the notice to terminate the tenancy. Another judge of the Essex County District Court dismissed plaintiff's complaint in a letter opinion finding that the "basis upon which [the landlord] sought to dispossess the tenant was not one of the designated statutory grounds for removal." Specifically, the judge concluded that *N. J. S. A.* 2A:18–61.1 does

not expressly authorize summary eviction of a holdover residential tenant. However, the trial judge did not have occasion to rule upon the question presented here, *i.e.* whether the failure of a holdover tenant to pay the penalty exacted by *N. J. S. A.* 2A:42–5 permits summary eviction. Shortly thereafter plaintiff's attorney sent notice to defendant advising her that henceforth the monthly rental was to be increased to $390 by virtue of her "holdover" status. The attorney also enclosed a copy of *N. J. S. A.* 2A:42–5. Following service of the notice upon defendant, plaintiff received a check in the sum of $195 which it credited against the $390 allegedly due with respect to the August rent. Plaintiff instituted this action upon defendant's refusal to tender the additional $195 which the landlord claims is due and owing.

## I

Defendant first contends that the notice purportedly terminating her tenancy was defective. It is argued that defendant's letter of June 6, 1978 did not effectively terminate her tenancy because it failed to provide the landlord with one month's notice. Since the notice was ineffective, defendant claims that the double rent penalty under *N. J. S. A.* 2A:42–5 is inapplicable.

The short answer to defendant's argument is that plaintiff had the right to waive any defect in the notice. Although it is axiomatic that neither a landlord nor a tenant can terminate a tenancy from month to month except upon proper notice, *Hanks v. Workmaster*, 75 *N. J. L.* 73, 75 (Sup. Ct. 1907), it is equally well settled that any defect may be waived. *Traubman v. Sevestre*, 4 *N. J. Misc.* 463, 464 (Sup. Ct. 1926). Here, there can be no doubt that plaintiff waived defendant's failure to provide it with a full month's notice[7]. In point of fact, plaintiff insisted that de-

---

[7]Since the written lease had expired, the 60-day notice provision is inapplicable. Even assuming that the tenant was bound to pro-

fendant vacate the premises when the latter sought to revoke the notice. Defendant cannot now be heard to contend that her letter did not effectively terminate the tenancy.

## II

Defendant next contends that the penalty provided by *N. J. S. A.* 2A:42-5 does not constitute "rent due and owing under the lease," as that phrase is utilized in *N. J. S. A.* 2A:18-61.1(a). More specifically, it is argued that the liability imposed by *N. J. S. A.* 2A:42-5 is in the nature of a statutory penalty. The principal thrust of defendant's argument is that the liability imposed by the statute does not constitute "rent" arising from a "lease."

As noted previously, *N. J. S. A.* 2A:42-5 mandates the payment of double rent where a tenant gives notice of his intention to quit the premises but fails to adhere to its terms. Suffice it to say, the statute is of ancient lineage, having had its genesis in 4 *Geo.* II, c. 28, sec. 1 and 11 *Geo.*II, c. 19, § 18[8]. *Wagner v. Mayor, etc., Newark,* 42 *N. J. Super.* 193, 210 (Law Div. 1956), rev'd 24 *N. J.* 467 (1957); *200 Washington Street Corp. v. Bettone Hearing Service,* 32 *N. J. Super.* 81, 84 (Law Div. 1954). Nevertheless, the statutory penalty has been applied in a relatively few instances. See, *e. g., Ancona Printing Co. v. Welsbach,* 92 *N. J. L.* 204 (E. & A. 1918); *Mason v. Haurand,* 82 *N. J. L.* 645 (E. & A. 1912): *Ricci v. Claire,* 21 *N. J. Misc.* 266, (D. Ct. 1942). Despite the paucity of published decisions,

---

vide 60 days rather than one month's notice, defendant had the right to waive this requirement.

[8] *N. J. S. A.* 2A:42-5 and *N. J. S. A.* 2A:42-6 are both derived from 4 Geo. II, c. 28, § 1 and 11 Geo. II, c. 19, § 18. *N. J. S. A.* 2A:42-5 mandates the payment of double rent where the tenant has served a notice to terminate a periodical tenancy, but holds over. *N. J. S. A.* 2A:42-6 requires the tenant to pay "double the yearly value of the real estate" where he fails to comply with a notice and demand for possession served upon him by the landlord. See *Ancona Printing Co. v. Welsbach Co.,* 92 *N. J. L.* 204 (E & A 1918).

the statutory ·design is plain. In short, the penalty exacted under the statute was intended to punish a tenant who willfully holds over after giving notice of his intention to quit. *Wagner v. Mayor, etc., Newark, supra,* 42 *N. J. Super.* at 210–211.

The legislative objective underlying the enactment of the 1974 amendments to the summary dispossess statutes was quite different. With minor exceptions[9], the statutory scheme destroyed the ancient concept of the holdover tenant with respect to residential tenancies in summary eviction proceedings. Presently, a residential tenant may be evicted in a summary proceeding only ·upon a showing of "good cause." *N. J. S. A.* 2A:18–61.3. Further, the statute defines good cause and delimits the grounds upon which a summary eviction can be obtained. *N. J. S. A.* 2A:18–61.3. In essence, the 1974 amendments provide the tenant with the option of a lifetime tenancy unless he violates his obligations under the lease. In sum, the amendments withdrew from property owners the right of eviction on the basis of a mere notice to quit or termination of leasehold, "which has been a recognized incident of property ownership from the time of Henry VIII. * * *" *Gardens v. Passaic,* 130 *N. J. Super.* 369, 375 (Law Div. 1974), aff'd 141 *N. J. Super.* 436 (App. Div. 1976). To a large extent, therefore, the public interest sought to be advanced by *N. J. S. A.* 2A:42–5 conflicts with the 1974 amendments.

 The summary dispossess remedy "is a creature of the Legislature" (*Cahayla v. Saikevich,* 119 *N. J. Super.*

---

[9]*N. J. S. A.* 2A:18–61.1 is inapplicable with respect to "owner-occupied ·premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant. * * *" *N. J. S. A.* 2A:18–53 applies to commercial tenancies and owner occupied premises with not more than two rental units. It has recently been held that a landlord need not resort to the summary dispossess remedy with respect to hotel guests. See *Porozonoff v. Alberti,* 161 *N. J. Super.* 414 (D. Ct. 1978).

116, 118 (Cty. D. Ct. 1972)), and was "intended to overcome the obstacles incident to ejectment whereby the tenant could resort to technical delays and withhold possession for an indefinite period." *Le Wine, Landlord and Tenant Law,* § 3231 at 486 (1962). Since the landlord's power to evict his tenant in summary proceedings "is entirely the creation of statute," *Schlesinger v. Brown,* 116 *N. J. Super.* 500, 502 (Cty. D. Ct. 1971), its provisions are to be strictly construed. See *Carleret Properties v. Variety Donuts, Inc.* 49 *N. J.* 116, 124 (1967). It is thus necessary to distinguish between the common law right of a landlord to regain possession of his property and his legal authority to pursue the summary dispossess remedy. As noted, "[t]he latter is not a 'right' at all. It is a privilege established by statute. * * *" *25 Fairmount Ave., Inc. v. Stockton,* 130 *N. J. Super.* 276, 285 (Cty. D. Ct. 1974).

It is against this backdrop that the applicability of the statutory penalty to eviction proceedings instituted under *N. J. S. A.* 2A:18–61.1(a) must be considered. Research has failed to disclose any published decision construing the phrase "rent due and owing under the lease," as set forth in *N. J. S. A.* 2A:18–61.1(a). Further, the terms "rent" and "lease" are not specifically defined in the Anti-Eviction Act. That being the case, the words should be given their normal meanings consistent with the intent of the Legislature and the spirit of the act. The term "rent" is generally defined as "the consideration paid by a tenant for the use or occupation of property." *Modular Concepts, Inc. v. South Brunswick Tp.,* 146 *N. J. Super.* 138, 147 (App. Div. 1977). "Loosely speaking, rent is the compensation paid, either in money, labor, produce or something similar, for the use of real estate." *Le Wine, Landlord and Tenant Law,* §§ 1411, at 776. See also, *Vineland Shopping Center, Inc. v. De Marco,* 35 *N. J.* 459, 470 (1961). A lease is defined as "any agreement which gives rise to a relationship of landlord and tenant." *Delmat Corp. v. Kahn,* 147 *N. J. Super.* 293, 297 (App. Div. 1977). Stated somewhat differ-

ently, a lease "is a conveyance of real estate for life, for years, at will, or for some other period less than that * * *in consideration of rent or other recompense to be paid to the lessor." *Le Wine, op. cit.,* § 2, at 6. However phrased, both terms connote a consensual agreement between the parties.

So posited, it can hardly be argued that the liability imposed by *N. J. S. A.* 2A:42–5 constitutes "rent due and owing under the lease," as that phrase is employed in *N. J. S. A.* 2A:18–61.1(a). Rather, *N. J. S. A.* 2A:42–5 prescribes a statutory penalty based upon the failure of the tenant to comply with the terms of a notice to quit. See *Ricci v. Claire,* 21 *N. J. Misc.* 266, 271 (D. Ct. 1943). See also *Mason v. Haurand, supra* 88 *N. J. L.* at 649. In no sense can the penalty thus exacted be considered as rent to be paid under the lease.

A restrictive reading of *N. J. S. A.* 2A:18–61.1(a) comports with the Legislature's intent in enacting the 1974 amendments to the Anti-Eviction Act. "Implicit in the enactment of [those statutes] was a determination that a housing emergency existed in the State, especially in the low and moderate-income * * * areas." *Floral Park Tenants v. Project Holding, Inc.,* 152 *N. J. Super.* 582, 590–591 (Ch. Div. 1977). See also, *Southern Burlington Cty. NAACP v. Mt Laurel Tp.,* 67 *N. J.* 151, 159 (1975). The amendatory legislation was thus adopted in response to the critical housing shortage plaguing New Jersey residents. See *Gardens v. Passaic, supra,* 130 *N. J. Super.* at 375; *25 Fairmount Ave., Inc. v. Stockton, supra,* 130 *N. J. Super.* at 285. The concern of the Legislature was well warranted, for the deteriorating housing problem in this State had "made it almost impossible for dispossessed tenants to locate other * * * accommodations." *Gardens v. Passaic, supra,* 130 *N. J. Super.* at 375. Hence, the history of the Anti-Eviction Act plainly dictates that the statutory provisions authorizing summary eviction be strictly construed.

Further, an expansive construction of the phrase "rent due and owing under the lease" by including within its

purview the penalty imposed by *N. J. S. A.* 2A:42–5 would conflict with other amendments enacted in 1974. *N. J. S. A.* 2A:18–61.1(f), for example, permits a landlord to institute a summary dispossess action where the tenant has failed to pay an increase of rent. However, the county district court is to dismiss the proceedings if it finds that the rent increase was "unconscionable" or did not comply with governing municipal ordinances. Quite plainly, applying the penalty exacted by *N. J. S. A.* 2A:42–5 would serve to increase the rent to an unconscionable extent. An increase of such major proportions would "shock the conscience" of the average person and thus be unenforceable under *N. J. S. A.* 2A:18–61.1(f). See *Edgemere at Somerset v. Johnson,* 143 *N. J. Super.* 222, 229 (Cty. Ct. 1976).

Our courts have refused to apply the double rent penalty in a somewhat related context. In *Ricci v. Claire, supra,* plaintiff sought to recover double rent where the defendant had failed to adhere to the terms of a notice to terminate the tenancy which had previously been served upon the landlord. Defendant claimed that the penalty exacted under *N. J. S. A.* 2A:42–5 would conflict with federal price control regulations promulgated under the Emergency Price Control Act. The court agreed, holding that enforcement of the state statute mandating payment of the double rent penalty would conflict with the federal regulations. *Id.* 21 *N. J. Misc.* at 271. The court concluded that a contrary holding would create a serious evasion of the enforcement of the Emergency Price Control Act.

In a similar vein, enforcement of the double rent penalty exacted under *N. J. S. A.* 2A:42–5 would conflict with the sound policy expressed in the Anti-Eviction Act. Such a rent increase would seem "monstrously harsh and shocking to the conscience." *Edgemere at Somerset v. Johnson, supra,* 143 *N. J. Super.* at 229. Plainly, application of the liability imposed under *N. J. S. A.* 2A:42–5 in the guise of a rent increase would serve no purpose other than that of "compelling the tenant to vacate." *Id.* at 229–230. Under these

circumstances, such an increase must be considered unconscionable under *N. J. S. A.* 2A:18-61.1.(f).

In sum, the legislative history underlying the Anti-Eviction Act as well as its articulated objective militate strongly against plaintiff's contention that the statutory penalty constitutes rent as that term is used in *N. J. S. A.* 2A:18-61.1(a). I find specifically that the liability imposed by *N. J. S. A.* 2A:42-5 does not constitute "rent due and owing under the lease." There is thus no reason to consider defendant's alternative argument that *N. J. S. A.* 2A:42-5 was impliedly repealed by the Legislature's subsequent enactment of the 1974 amendments to the summary dispossess statutes. Resolution of that question must await another day. It is to be noted, however, that the court is not unsympathetic to plaintiff's plight in this case. To be sure, defendant wrongfully failed to adhere to the terms of the notice to quit which she precipitously served upon the landlord. However, plaintiff is not without its remedy[10]. If plaintiff has sustained damages by virtue of defendant's conduct, a civil suit may be commenced. Further, if a judgment is obtained, plaintiff may utilize traditional remedies to insure that it is satisfied. The decision here goes no further than to preclude the landlord from utilizing the summary dispossess remedy under the facts presented.

---

[10]It is unnecessary to decide whether plaintiff may institute an action for ejectment under *N. J. S. A.* 2A:35-1. See *Aeon Realty Co. v. Arth*, 144 *N. J. Super.* 309, 313 (App. Div. 1976).